IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL LEE CALLEGARI, ) | No. C 08-2420 MMC (PR) |
| ) | |
| Plaintiff, ) | **ORDER DENYING PLAINTIFF'S** |
| ) | **MOTION TO COMPEL; GRANTING** |
| v. ) | **DEFENDANTS' MOTION FOR** |
| ) | **SUMMARY JUDGMENT; DENYING** |
| CHARLES D. LEE, M.D., et al., ) | **PLAINTIFF'S MOTION FOR** |
| ) | **SUMMARY JUDGMENT** |
| Defendants. ) | |
| _____ ) | **(Docket Nos. 45, 57, 60)** |

On May 12, 2008, plaintiff, a California prisoner then incarcerated at Salinas Valley State Prison ("SVSP") and proceeding pro se, filed the above-titled civil rights complaint pursuant to 42 U.S.C. § 1983, claiming deliberate indifference to his serious medical needs by medical officials at SVSP.[1] Specifically, plaintiff alleges defendants refused to treat him for his Hepatitis A, B, and C. Plaintiff asks the Court to order that he be seen by a private physician; plaintiff also seeks monetary damages.

Now before the Court are: (1) plaintiff's motion to compel, (2) plaintiff's motion for summary judgment, and (3) defendants' cross-motion for summary judgment.[2]

---

[1] In October 2011, plaintiff was transferred to California State Prison-Sacramento, where he currently resides.

[2] Defendants filed a motion to dismiss or, in the alternative, a motion for summary judgment on May 6, 2010. The Court denied the motion on January 19, 2011 but allowed defendants to renew their motion for summary judgment. (See Dkt. No. 42.)

**BACKGROUND**

The following facts are drawn from plaintiff's verified first amended complaint ("FAC") and the parties' evidence submitted in support of and in opposition to the motions for summary judgment. The facts are undisputed unless otherwise noted.

In 2004, while incarcerated at SVSP, plaintiff was diagnosed with Hepatitis A, B and C. (FAC at 3 & Ex. B.) Specifically, Dr. Randolph Gibbs tested plaintiff on April 5, 2004. (Decl. Ly Supp. Mot. Summ. J. ("Ly Decl.") Ex. A.) The presence of antibodies showed a past infection of Hepatitis A and B, but there was no indication of current infection. (Decl. Bowman Supp. Mot. Summ. J. ("Bowman Decl.") ¶ 3.) The test results showed plaintiff did have a current Hepatitis C infection. (Id.) The infection, however, was not acute in that there was no significant liver dysfunction. (Id.; FAC at Ex. B.)

Plaintiff states he did not receive medical treatment for Hepatitis. Specifically, according to plaintiff: (1) in 2004, Dr. Randolph Gibbs refused to provide plaintiff with combination therapy for Hepatitis treatment; (2) in 2005, Drs. Reynal Cordero, Navneet Adya, Anthony Milanes and Lovevasia Bey refused to provide plaintiff with Hepatitis treatment; (3) in 2006, Dr. Randy Sid refused to provide plaintiff with Hepatitis treatment; (4) in 2007, Drs. Robert Bowman and R. Rodrigues refused to provide plaintiff with Hepatitis treatment, and (5) in 2008, Dr. Sid again refused to provide plaintiff with Hepatitis treatment. (See FAC at 3, 5.) Plaintiff also alleges that, nine months after his diagnosis, he was told he would receive "combination therapy" for his Hepatitis. (FAC at 3.) Plaintiff further alleges that, following his diagnosis, various SVSP medical practitioners denied plaintiff had Hepatitis. (FAC at 5-6.)

Pursuant to California Department of Corrections ("CDC") protocol and the standard of care in the medical community, treatment to eradicate a Hepatitis C virus is only recommended where the patient shows signs of liver deterioration. (Decl. Hart Supp. Mot. Summ. J. ("Hart Decl.") ¶ 4; Bowman Decl. ¶ 3.) Also pursuant to CDC policy, a patient who tests positive for Hepatitis will have his liver function monitored. (Hart Decl. ¶ 4.) If enzymes are twice the normal level, a liver biopsy is conducted. (Id.) The results of the

biopsy will determine whether treatment is necessary. (Id.)

SVSP placed plaintiff on a Hepatitis monitoring protocol on August 23, 2004, and his condition was evaluated in a chronic care visit on March 23, 2005. (Ly Decl. Ex. B.)

Plaintiff received another lab test for Hepatitis C on April 6, 2005. (Ly Decl. Ex. C.) Again, the results showed no acute infection. (Id.)

Plaintiff received several healthcare visits for a number of complaints, including his Hepatitis. (Id. Exs. C-D.) Specifically, plaintiff had visits on May 2, 2005, May 25, 2005, August 8, 2005, February 9, 2006, November 17, 2006, January 12, 2007, September 20, 2007, and October 4, 2007. (Id.) He had lab work on August 15, 2005, August 25, 2005, and December 5, 2006. (Id.)

On November 5, 2007, plaintiff filed a medical administrative appeal, asking to be seen by a private, i.e. non-SVSP, doctor. (Ly Decl. Ex. E.) Nurse Seth Mejias interviewed plaintiff on November 30, 2007 and denied the request for an outside doctor, due to plaintiff's failure to submit a written request to the institution head pursuant to CCR Title 15 Section 3354. (Id.)

Plaintiff's Hepatitis was further monitored in a chronic care visit on December 26, 2007. (Ly Decl. Ex. F.)

In January 2008, Debra Tyler, F.N.P. and Karen Brannon, M.D. conducted a second level review of plaintiff's administrative appeal. (Ly Decl. Ex. E.) They reviewed the submitted documentation and plaintiff's health record and concluded plaintiff had no history of an acute Hepatitis C infection. (Id.) They nonetheless ordered a new screening test for Hepatitis A, B, and C. (Id.) Charles Lee, M.D. signed the decision on January 15, 2008. (Id.)

Plaintiff's Hepatitis was further monitored in a chronic care visit on March 27, 2008. (Ly Decl. Ex. G.)

Plaintiff filed a third, i.e., Director's level appeal, again asking to see a private, non-SVSP doctor. On April 25, 2008, N. Grannis, Chief Inmate Appeals Coordinator, denied the appeal, on the ground that Dr. Lee already had ordered further testing for plaintiff and

3

plaintiff had no right to see a private physician under such circumstances. (Ly Decl. Ex. E.)

Plaintiff filed this action on May 12, 2008.

On June 17, 2008, Dr. Randy Sid ordered more lab tests to monitor plaintiff's Hepatitis. (Ly Decl. Ex. H.) On September 11, 2008, plaintiff had another chronic care visit. (Id.) On October 27, 2009, plaintiff refused a blood test because he wanted a private outside lab to do the blood work. (Id.)

Plaintiff was transferred to California State Prison ("CSP")-Los Angeles County in December 2009. (Ly Decl. Ex. I.) On February 12, 2010, he had a chronic care visit for his Hepatitis, and on February 18, 2010, he received more lab tests. (Id.) Plaintiff was again evaluated on April 15, 2010. (Id.)

Plaintiff was transferred to CSP-Corcoran in April 2010. (Ly Decl. Ex. J.) On May 24, 2010, plaintiff had a clinic visit where lab tests were ordered. (Ly Decl. Ex. K.) In June 2010, his lab results were reviewed, and a referral was made for a liver biopsy. (Hart Decl. ¶ 8.) In December 2010, plaintiff had a liver biopsy. (Ly Decl. Ex. L.) The biopsy showed the Hepatitis had caused "minimal inflammatory activity (grade 1) and portal fibrosis (stage 1)." (Id.) There was no evidence of fat metamorphosis, cholestatis, or stainable iron. (Id.) Because these results did not show significant liver dysfunction, no specific treatment has been initiated. (Bowman Decl. ¶ 3.)

**DISCUSSION**

I. <u>Motion to Compel</u>

Plaintiff has filed a motion to compel discovery. The motion will be denied as there is no indication plaintiff has fulfilled the meet and confer requirement under Federal Rule of Civil Procedure 37(a)(1) and Northern District of California Civil Local Rule 37-1(a).

II. <u>Defendants' Motion for Summary Judgment</u>

A. <u>Legal Standard</u>

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Material facts are those that may affect the

4

1  outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A
2  dispute as to a material fact is genuine if the evidence is such that a reasonable jury could
3  return a verdict for the nonmoving party. See id.

4        The court will grant summary judgment "against a party who fails to make a showing
5  sufficient to establish the existence of an element essential to that party's case, and on which
6  that party will bear the burden of proof at trial[,] . . . since a complete failure of proof
7  concerning an essential element of the nonmoving party's case necessarily renders all other
8  facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving
9  party bears the initial burden of identifying those portions of the record that demonstrate the
10 absence of a genuine issue of material fact. Id. The burden then shifts to the nonmoving
11 party to "go beyond the pleadings, and by [his] own affidavits, or by the 'depositions,
12 answers to interrogatories, and admissions on file,' designate 'specific facts showing that
13 there is a genuine issue for trial.'" See id at 324 (citing Fed. R. Civ. P. 56(e) (amended
14 2010)).

15       For purposes of summary judgment, the court must view the evidence in the light most
16 favorable to the nonmoving party; if the evidence produced by the moving party conflicts
17 with evidence produced by the nonmoving party, the court must assume the truth of the
18 evidence submitted by the nonmoving party. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158
19 (9th Cir. 1999). The court's function on a summary judgment motion is not to make
20 credibility determinations or weigh conflicting evidence with respect to a disputed material
21 fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
22 1987).

23       A verified complaint may be used as an opposing affidavit under Rule 56, as long as it
24 is based on personal knowledge and sets forth specific facts admissible in evidence. See
25 Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's
26 verified complaint as opposing affidavit where, even though verification not in conformity
27 with 28 U.S.C. § 1746, plaintiff stated, under penalty of perjury, contents were true and
28 correct, and allegations were not based purely on information and belief but rather on

5

personal knowledge).

### B. Deliberate Indifference to Serious Medical Needs

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. (citing Estelle v. Gamble, 429 U.S. at 104). A prison official is deliberately indifferent if he knows a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." Id. Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. See McGuckin, 974 F.2d at 1060.

A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. Id. at 1059. Nor does a difference of opinion between a prisoner-patient and prison medical authorities regarding proper treatment amount to deliberate indifference. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). In particular, a plaintiff's opinion that medical treatment was unduly delayed does not, without more, state a claim of deliberate indifference. Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Rather, in order to prevail on a claim based on delayed treatment, a plaintiff must show the course of treatment the doctors chose was medically unacceptable under the circumstances, such treatment was chosen in conscious disregard of an excessive risk to the plaintiff's health, and the delay resulted in harm to the plaintiff. See Jackson v.

1  McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

2      C.    Analysis

3          1.    Defendants Gibbs, Adya, Bey, Milanes, Sid, Rodriguez, and Bowman

Plaintiff alleges SVSP medical staff, specifically, Drs. Gibbs, Adya, Bey, Milanes, Sid, Rodriguez, and Bowman, were deliberately indifferent to his serious medical needs in that they refused to treat his Hepatitis A, B, and C from 2004 to 2008. Defendants concede, for purpose of this motion only, that a question of fact exists as to whether plaintiff had a serious medical need. (Defs.' Mot. Summ. J. at 6.) The record, however, amply demonstrates defendants provided plaintiff adequate care.

As discussed above, plaintiff's 2004 lab tests showed the presence of Hepatitis A, B, and C antibodies, and defendants have provided undisputed evidence that there was no acute infection requiring treatment. Although plaintiff alleges he was promised and did not receive "combination therapy," and that various defendants denied his Hepatitis diagnosis, he does not show he was denied appropriate medical attention. To the contrary, the evidence shows defendants regularly monitored and assessed plaintiff's condition and recommended treatment according to his clinical presentation. As discussed above, during plaintiff's four years at SVSP following his Hepatitis diagnosis, plaintiff received at least twelve healthcare visits and five lab tests. Nor were plaintiff's complaints ignored by SVSP staff, who investigated his administrative appeals and ordered lab testing in response thereto. At no time during his incarceration at SVSP did plaintiff have an acute Hepatitis infection. (Hart Decl. ¶ 9.) Plaintiff's blood work did not indicate a need for further follow-up by way of a liver biopsy until June 2010, more than two years after the instant case was filed. (Id.) Defendants have submitted declarations from two medical doctors stating plaintiff's treatment for his Hepatitis conformed with guidelines followed both in the CDC and in the larger medical community. (Hart Decl. ¶ 9.; Bowman Decl. ¶ 3.) Plaintiff has failed to come forward with specific facts showing conflicting evidence.

Considering the evidence in the light most favorable to plaintiff, the Court finds plaintiff fails to raise a triable issue of material fact as to whether SVSP medical staff

7

defendants were deliberately indifferent to plaintiff's serious medical needs. Accordingly, summary judgment will be granted as to defendants Gibbs, Adya, Bey, Milanes, Sid[3], Rodriguez, and Bowman.

### 2. Defendants Brannon, Lee, Mejias, and Tyler

Defendants argue that defendants Brannon, Lee, Mejias, and Tyler are entitled to summary judgment because plaintiff cannot establish an Eighth Amendment claim based on the denial of his administrative appeals. The Court agrees. Plaintiff's complaint alleges no wrongdoing by these defendants directly related to the medical care he received. Rather, said defendants are named in the complaint solely because they reviewed and denied, or partially denied, plaintiff's inmate appeals. (See FAC at 5-6.) There is no constitutional right, however, to a prison administrative appeal or grievance system. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Consequently, an incorrect decision on an administrative appeal or a failure to handle it in a particular way does not amount to a violation of plaintiff's constitutional rights. See id.

Accordingly, summary judgment will be granted as to defendants Brannon, Lee, Mejias, and Tyler.

### III. Plaintiff's Motion for Summary Judgment

As noted, plaintiff has filed a motion for summary judgment. When the parties file cross-motions for summary judgment, the district court must consider all of the evidence submitted in support of both motions to evaluate whether there exists a genuine issue of material fact precluding summary judgment for either party. Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1135 (9th Cir. 2001). Not only does the party moving for summary judgment bear the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact, see Celotex, 477 U.S. at 323, but where the moving party will have the burden of proof on an issue at trial, as does plaintiff here, he must affirmatively demonstrate

---

[3] Defendant Randy Sid is sued herein as "Sid Rany."

8

no reasonable trier of fact could find other than for the moving party, <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007). Moreover, as noted above, the court must view the evidence in the light most favorable to the nonmoving party; thus, if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See <u>Leslie v. Grupo ICA</u>, 198 F.3d 1152, 1158 (9th Cir. 1999).

Here, based on the Court's above-discussed review of the pleadings, exhibits, and declarations submitted by both parties, and viewing the evidence in the light most favorable to defendants, the Court must conclude plaintiff has not carried his burden of presenting evidence that affirmatively demonstrates no reasonable trier of fact could find other than in favor of plaintiff. Accordingly, plaintiff's motion for summary judgment will be denied.

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's motion to compel is hereby DENIED.

2. Defendants' motion for summary judgment is hereby GRANTED.

3. Plaintiff's motion for summary judgment is hereby DENIED.

4. The Clerk shall enter judgment in favor of all defendants and close the file.

This order terminates Docket Nos. 45, 57, and 60.

IT IS SO ORDERED.

DATED: December 1, 2011

MAXINE M. CHESNEY
United States District Judge